UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

SCOTT LEFEBVRE,

      Plaintiff,

v.                             Case No: 09-CV-141

SENA SEVERANCE PAY PLAN and
NEWPAGE WISCONSIN SYSTEM, INC.,

      Defendants.

---

MELISSA J. REDDINGER,

      Plaintiff,

v.                             Case No: 09-CV-119

SENA SEVERANCE PAY PLAN and
NEWPAGE WISCONSIN SYSTEM, INC.,

      Defendants.

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs seek to forestall summary judgment through the use of obfuscation, shifting legal theories, and completely unsupported factual propositions that severely distort the record in this case. Such tactics fail to conceal the utter lack of merit of any of Plaintiffs' claims. The record clearly shows that there is no *genuine* dispute of material fact in this case. Plaintiffs have not shown that there was ever a "contract" to terminate them on May 2. The March 10 offer to do so was clearly revoked by NewPage *before* acceptance. Revocation of the offer is hardly surprising. Indeed, it is only logical that when NewPage postponed the closure of its Niagara

Mill, it extended the employment of employees working there. The Company had every right to delay Plaintiffs' scheduled release dates under such circumstances and Plaintiffs were well aware that the Company desired their services beyond May 2. Accordingly, NewPage's determination that Plaintiffs' departure on May 2 was not 'involuntary' and therefore did not entitle them to severance is fully supported by the record evidence, which shows that Plaintiffs left then because *they chose to*, not at the instance of NewPage. Such decision is not arbitrary or capricious, but is the only reasonable conclusion that could be drawn under these circumstances.

Plaintiffs have not demonstrated that there is any dispute of any genuine issue of material fact. Because the undisputed record shows that Plaintiffs cannot make out any element of any of their claims, Defendants request that the Court grant their motion for summary judgment.[1]

## I. **PLAINTIFFS' ERISA BENEFITS CLAIMS FAIL**

### A. **The Arbitrary And Capricious Standard Is Clearly Applicable.**

Plaintiffs' argument that *de novo* review is required in this case because "[t]he real decision was actually made by executives at New Page and not the Plan Administrator" is unsupported by the record and must be disregarded. (Br. at 2; Response to PPFOF 12-15.) The claim that NewPage categorically denied Plaintiffs severance when it decided that the Niagara Mill would remain open until October, rather than close in April as originally planned, is frivolous.

It is indisputable that NewPage's intention in keeping its mill operating was not to deny the Plaintiffs severance, but rather to fill its customer's orders and to remain an ongoing concern while the Company attempted to sell the mill. (Reichert Dep. at 49, 52-53; Dep. Ex. 6; DPFOF 98-99 (admitted).) There is <u>no record evidence whatsoever</u> that supports Plaintiffs' twisted

---
[1] Defendants note that Plaintiffs also filed an untimely Motion for Summary Judgment, which is the subject of Defendants' pending Motion to Strike. Defendants reserve the right to respond fully to Plaintiffs' motion, in the event it survives the Motion to Strike.

argument that the decision to keep the mill open was, in fact, a decision to deny Plaintiffs' severance. In fact, Plaintiffs' argument flies in the face of all record evidence and is a blatant misrepresentation of NewPage's entirely *separate* decisions. (Response to PPFOF 12-15.)

The Company's first decision - that the Niagara Mill should not close in April, but would remain open until approximately October -was indeed made by NewPage's corporate executives based upon the business needs of the Company. (Reichert Dep. at 44-49.) Clearly, since the mill was to remain open, NewPage needed to extend the employment of its salaried workforce to run the mill. (Smith Dep. at 35-36.) The Company therefore changed the termination dates for the vast majority of its employees.[2] It was entirely within the employer's discretion to push back the termination dates of Plaintiffs to whatever date the Company chose. That is precisely what makes a termination "involuntary" – the fact that it is at the instance of the Company, not the employee. See Rice Lake Creamery Co. v. Industrial Comm'n, 15 Wis. 2d 177, 187, 112 N.W.2d 202, 207 (1961) (defining "discharge" as "an unequivocal and unilateral act of the employer"…) Plaintiffs concede this fundamental point and offer no authority for the proposition that an employer cannot change its mind as to the date of a discharge.[3]

Most significantly, NewPage's decision to extend the operations of the Niagara Mill (and to staff it accordingly) was <u>not</u> a decision to deny Plaintiffs severance under the Plan. Plaintiffs' claim in their Brief that "the determination was that anyone who had not yet signed the Agreement would not be eligible under the Plan" cites no record evidence because it is simply untrue. (Br. at 4.) Indeed, the record shows the exact opposite is true. On March 24, Reichert announced that the mill would remain open until the fall, and employees would receive new

---

[2] The record shows that only six employees retained their original termination dates, by agreement with NewPage. (Smith Dep. at 32.)

[3] Plaintiffs instead argue that a contract had already been created to terminate Plaintiffs on May 2. As discussed further below, no evidence supports this notion. There was no contract signed by Plaintiffs when NewPage announced that it was changing the termination dates. (DPFOF 49 (admitted).)

3

severance agreements with new release dates. Clearly, the intention was to delay, not eliminate, the payment of severance. On March 27, Bill Smith reiterated this, in a letter to Plaintiffs:

> "[T]he severance will be paid to you at the new closure date under the same terms and conditions and with new release dates…" (Dep. Ex. 3.)

Plaintiffs' claim that NewPage's decision to keep the mill open effectively denied them severance under the Plan is false. NewPage's desire to continue Plaintiffs' employment is overwhelmingly evident in the record. The Company not only restated its commitment to severance for employees who remained employed until their termination dates, but it offered *retention bonuses* to those who chose to stay rather than take other jobs. Furthermore, Smith's unrefuted testimony shows that the majority of salaried employees were paid severance. Smith testified: "There were many people that left at the end of summertime and they fulfilled their release date and they received their severance, so that was the majority of the salaried work force." (Smith Dep. at 33.)

It is also undisputed that the decision to deny Plaintiffs' claims for severance under the Plan was made months later by Bill Smith acting as Plan Administrator within the discretion appointed to him under the Plan. (DPFOF 88-90, 94 (admitted).) "[W]here an ERISA plan gives the plan administrator discretion to interpret the plan terms or determine benefits eligibility, a reviewing court employs the arbitrary and capricious standard [of review]." Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 827 (7th Cir. 2004) (citations omitted). Mr. Smith determined that Plaintiffs were ineligible because they were not involuntarily terminated on May 2. (Smith Decl. ¶¶ 8-9.)

Smith's decision is very clearly an "eligibility" determination that falls within controlling Seventh Circuit precedent applying the arbitrary and capricious standard in a virtually identical case. See James v. General Motors Corp., 230 F.3d 315, 318 (7th Cir. 2000) (applying arbitrary

and capricious standard to Plan Administrator's decision that employee was ineligible for severance because she "voluntarily quit.") Plaintiffs make no effort to distinguish this case from James. Plaintiffs cannot show that Smith's decision was wrong, much less "downright unreasonable" and summary judgment should be entered for NewPage.[4] See Dabertin, 373 F.3d at 828 (administrator cannot be overturned unless its decision was "a downright unreasonable one.")

B. **No Record Evidence Supports A Finding Of Conflict Of Interest.**

Plaintiffs' argument that less deference is due to the Plan Administrator in this case because there was a "conflict of interest" is equally flawed and unsupported. In fact, the record is barren of any facts that would support a finding of conflict in this case. Plaintiffs first argue that NewPage was biased because the Company was about to go out of business and therefore had no incentive to administer the Plan so as to retain the loyalties of current employees and attracting new talent. (Br. at 6.) NewPage has not gone out of business. The Company, which is publicly traded, owns and operates ten paper mills in several states and employs approximately 6,440 people. (Drew Reply Decl. Ex. A.) Undisputed record evidence shows that when the Niagara Mill closed, a number of employees obtained other positions within the Company. (Reichert Dep. at 8, 39, 54.) Thus, NewPage has a strong interest in maintaining loyalty and attracting talent within the paper industry. Plaintiffs' argument lacks all merit.

So too, Plaintiffs' attempts to impugn the character of Bill Smith must be disregarded. Plaintiffs' claim that Mr. Smith was a "corporate officer whose decisions were based upon the needs of the business and not solely the interests of the employees" is unfounded and completely mis-states' NewPage's fiduciary obligations. Mr. Smith did not testify that he was a corporate

---

[4] Even if Plaintiffs' argument that *de novo* review is required were tenable (which it is not), based upon the record evidence the Court would surely reach the same conclusion as Mr. Smith – i.e., that Plaintiffs were not "involuntarily" terminated on May 2, and therefore are ineligible under the Plan. Under either standard, summary judgment for NewPage is warranted.

5

officer nor is he an officer. (Drew Reply Decl. Ex. B.) Even if he were, controlling Seventh Circuit precedent holds that ERISA "endorses the idea that a corporate officer can also serve as a plan administrator." Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 815 (7th Cir. 1997) (finding no conflict of interest), citing Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995) ("the impact on a company's welfare of granting or denying [severance] benefits under a plan will not be sufficiently significant as to threaten the administrator's partiality.") Moreover, the record is devoid of evidence that Smith considered the Company's interests when deciding whether to pay severance to Plaintiffs. The cited deposition testimony concerns the decision to keep the mill open, not Smith's much later decision to deny severance. (Smith Dep. at 33-34.)

The Seventh Circuit has repeatedly rejected claims of conflict of interest such as those advanced by the Plaintiffs in this case. Because Plaintiffs' argument has no basis in fact or in law, it should be disregarded and summary judgment should be entered for NewPage.

    **C.**    **Plaintiffs Make No Showing On Their Breach Of Fiduciary Duty Claims.**

"Duties under ERISA are plan-specific." Beach v. Commonwealth Edison Co., 382 F.3d 656, 658 (7th Cir. 2004) (internal citations omitted). ERISA defines a "fiduciary" as a person who exercises authority or discretion over the administration of a plan, but only when performing those functions. Id., citing 29 U.S.C. § 1002(21)(A). Accordingly, Smith was not acting as a fiduciary to the extent he participated in NewPage's decision to postpone the closure of the Niagara Mill. Such business choice was not an administration of Plan assets and the record is devoid of any evidence that Plan assets played any role in NewPage's decision to extend the mill's operations. To the contrary, the testimony uniformly shows that the decision to postpone closure of the mill was made based upon customer needs and NewPage's desire to sell the mill as an ongoing concern. (DPFOF 98-99 (admitted); Reichert Dep. at 52-53, 58; Dep. Ex. 6.) NewPage's business decision was not, as a matter of law, a breach of any duty to Plaintiffs.

6

1. There was no "misinformation" or "concealment"

Plaintiffs argue that NewPage "totally misrepresented" Plaintiffs' rights under the Plan and failed to communicate material information to the Plaintiffs about the Plan. (Br. at 25-26.) Plaintiffs' misrepresentation argument rests on a faulty premise – namely, that Plaintiffs had a right under the Plan to severance as long as they worked until May 2. Plaintiffs' claim that Smith and Reichert deceived them by telling them the March 10 offers were no longer acceptable and their release dates were changing cannot form the basis of a misrepresentation claim unless such statements were false. (Br. at 26.) They were not false.[5] Plaintiffs' misrepresentation argument misses the mark by a wide margin and should be disregarded.

Likewise, Plaintiffs' claim that NewPage's silence over a period of five working days between March 17 and the announcement on March 24 was a breach of fiduciary duty because the decision shortened the consideration period of the March 10 offer fails. The consideration period for the March 10 offer relates only to the release agreement, **not the Plan**. (Dep. Ex. 5.) There is no evidence suggesting that Lynn Reddinger acted in a fiduciary capacity under the Plan when notifying employees of the consideration period for the separate release agreement.[6] See Pegram v. Herdich, 530 U.S. at 222 (holding that fiduciary status under ERISA generally involves the management of "plan assets."); Sutton v. Bell South Telecomm, Inc., 189 F.3d 1318, 1321 (11th Cir. 1999), cert. den., 528 U.S. 1188 (2000) (noting corporate management decisions "do not constitute fiduciary acts within the meaning of ERISA because "they do not

---

[5] Plaintiffs also argue that NewPage misrepresented to Lefebvre that the company was not accepting agreements on March 20, when in fact it was. Plaintiffs offer no competent evidence to support this claim, however, only an unauthenticated hearsay document referred to as the "DeMay Agreement" which is clearly inadmissible on summary judgment. See Response to PPFOF 1-2. Plaintiffs' argument is pointless, in any event, because speculation as to what would have occurred had Lefebvre signed his Agreement on March 20 (which he indisputably did not) is fruitless. Plaintiffs entered no competent evidence in the record to show that this hypothetical situation would have resulted in payment of severance to Lefebvre.

[6] The Reddinger email is a red herring in any event. It is undisputed that Reddinger sent the email on March 12, before the decision was made to extend the operation of the Niagara Mill. (Dep. Ex. 5.)

7

involve discretionary acts regarding plan administration.") Because the release agreements contained in the March 10 offer were separate and not part of the Plan, Plaintiffs' argument fails.

Moreover, Plaintiffs' argument is doomed to fail because precedent directly on point states that the 21 and 45-day consideration periods required for a release of age discrimination claims does <u>not</u> limit an employer's right to unilaterally revoke the release contract during the consideration period. In <u>Ellison v. Premiere Salons International, Inc.</u>, 164 F.3d 1111, 1114 (8th Cir. 1999) the Eighth Circuit aptly stated:

> The statute similarly ***does not forbid an employer from revoking an offer before the twenty-one days expire***. If Ellison's assertion were correct, an employer could not revoke an offered separation agreement even if the day after the offer was made the employee sold the employer's trade secrets to the company's biggest competitor, or the employee decided to shoot the company's president, or, as here, the employee made defamatory statements about the company or its president. The statute does not state that employees must be given the opportunity to waive their ADEA rights and it does not require employers to offer separation agreements. The language of the OWBPA simply seeks to ensure that, if the employee does waive his or her ADEA rights, the waiver is knowing and voluntary. If the offer is revoked prior to its acceptance, then the employee has not waived any rights under the ADEA and the OWBPA is not violated. (emphasis added)

NewPage therefore had no cognizable duty to inform Plaintiffs immediately of its decision to continue running the Niagara Mill, and was free to revoke the March 10 offer at any time prior to its acceptance. Furthermore, the argument defies common sense. What difference does it make whether NewPage revoked the offer on March 24 versus March 17? It is undisputed that neither Plaintiff had yet signed the Agreement, and therefore had not entered a "contract" to be terminated on any specific date. (DPFOF 49 (admitted).) Plaintiffs also have not shown that they took any action in "reliance" on the March 10 letters between March 17 - 24. Plaintiffs had applied for their new jobs months earlier, and did not accept their new positions until April. (DPFOF 41-42 (admitted); Rebuttal ¶¶ 1-2 re: DPFOF 107-108.) Finally, no

competent evidence in the record shows that had Plaintiffs turned in the signed Agreements earlier that they would have received severance – nor is it the Court's function to speculate.

Plaintiffs have shown no violation of any fiduciary duty. Summary judgment should be entered for NewPage dismissing Plaintiffs' ERISA benefits claims in their entirety.

## II. ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS

### A. Plaintiffs Misrepresent And Distort The Preemption Standard And Ignore Controlling Seventh Circuit Authority Directly On Point.

After arguing that Plaintiffs should prevail on their ERISA claims, Plaintiffs sharply detour and argue that "[t]he terms of the Plan indicate that it should not be considered a benefit plan under ERISA, and as a result, ERISA should not apply." (Br. at 7.) In addition to being irreconcilable with Plaintiffs' Complaints and their arguments in support of their own ERISA claims, Plaintiffs' attempt to avoid preemption is contradicted by substantial record evidence, starting with the Plan itself which states: "It is the intent of the Company that the Plan, as set forth herein, constitute an 'employee welfare benefit plan' within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974…" (Dep. Ex. 10, pg. 1.) The Plan provides an administrative scheme, as well as an appeals procedure, which was followed in this case. It is therefore an ERISA plan. See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11, 107 S.Ct. 2211 (1987) (defining benefit plan under ERISA as "benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligations.")

Similar severance pay plans have been held to be ERISA plans in numerous other cases. See eg. Bock v. Computer Assoc. International, 257 F.3d 700 (7th Cir. 2001) ("[Employer's] severance payment plan is governed by ERISA and properly subject to federal jurisdiction because it is an employee benefit plan…"); James, 230 F.3d at 318 (severance pay plan governed by ERISA). Indeed, the status of the Plan has never truly been contested by the parties in this

case. (Reddinger Compl. ¶¶ 17-18, 26-29; Lefebvre Compl. ¶¶ 17-18, 26-29.)

Plaintiffs offer no legitimate reason why their allegations in their Complaints and Seventh Circuit precedent holding that similar plans are governed by ERISA should be set aside. Instead, they argue that the purpose of ERISA is to regulate other, more complicated benefit systems. Plaintiffs claim: "the act of writing a check is not turned into the operation of a benefit plan by simple repetition. Once the calculated severance has been paid out in full, NewPage's obligation would cease." (Br. at 9.) To say that Plaintiffs woefully oversimplify the administration of the Plan at issue here is an understatement. NewPage's Plan contains a number of distinct factors that play into determining eligibility (as evidence by the present litigation). The Plan is hardly an exercise in arithmetic and check writing. Rather, eligibility arises in complex situations, such as "reduction in force," or "reorganization," and "business necessity." (Dep. Ex. 10, pg. 1.)

Plaintiffs' further argue, "no on-going administrative scheme is necessary to provide the benefits, unlike ones involving individualized and ongoing discretionary determinations based upon vague criteria for eligibility like being offered 'substantially equivalent employment by a successor company.'" (Br. at 9.) This is patently false. The Plan's detailed eligibility requirements show that precisely such complex determinations must be made in administration of the Plan. (Dep. Ex. 10, pg. 1 (c) (excluding employees who "are offered a comparable position with the purchaser of all or part of the Employer.") Likewise, Plaintiffs' claim that "whether one has been involuntarily terminated for business reasons is apparent and non-discretionary" is utter absurdity in the context of this case, which like <u>James</u> has arisen precisely because of a disagreement over that very issue.

Controlling Seventh Circuit precedent establishes that severance plans like the Plan in this case are governed by ERISA. See <u>Rud v. Liberty Life Assurance Co.</u>, 438 F.3d at 777 (7th

Cir. 2006) ("A suit to enforce a claim for benefits under an ERISA plan can be brought only under ERISA; parallel state law remedies are preempted."); Panaris v. Liquid Carbonic Indus., Inc., 74 F.3d 786, 792 (7th Cir. 1996) ("ERISA preempts all state law claims for severance benefits" where severance is provided under a plan containing an ongoing administrative scheme.) Plainly, ERISA preempts all state common law claims to severance under an ERISA plan. The record clearly establishes that NewPage's severance Plan is an ERISA plan. Accordingly, Plaintiffs' argument should be disregarded and summary judgment entered in favor of NewPage dismissing Plaintiffs' claims in their entirety.

      B.      **The Agreement Did Not Modify The Plan.**

Plaintiffs next argue that the March 10 Agreements modified the Plan. (Br. at 10-11.) Again, Plaintiffs' argument is unsupported by the record. As previously noted, the execution of a Company-approved release is one of several pre-conditions contained in the Plan. (Dep. Ex. 10, pg. 2.) The Release Agreement, although it refers to the Plan, does not modify or change the terms of the Plan in any respect. Rather, it simply states that severance benefits would be provided in accordance with the Plan. (Dep. Exs. 8, 14.) This does not mean (or even imply) that the participant need not meet all of the other eligibility requirements of the Plan.

In any event, the reference in the Agreement to the Plan further supports NewPage's argument that all of Plaintiffs' claims for severance are preempted by ERISA. It is well settled that a party cannot avoid preemption by relying on a document that is outside of an ERISA plan, but which "relates to" an ERISA plan. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that a state law claim is preempted by ERISA if an employer maintained an ERISA plan and the plaintiff's claim "relates to" that plan); see also Weeles v. Brach & Brock Confections, Inc., 14 Fed. Appx. 668, 2001 WL 8283887 (7th Cir. 2001) (unpublished) (holding that plaintiff's severance claim based upon offer letter that referred

11
Case 1:09-cv-00141-WCG    Filed 11/02/09    Page 11 of 16    Document 30

to benefits under severance plan was preempted by ERISA). Accordingly, Plaintiffs' argument fails and summary judgment should be entered in favor of NewPage.

### III. PLAINTIFFS' BREACH OF CONTRACT AND ESTOPPEL CLAIMS FAIL, EVEN ABSENT PREEMPTION

#### A. The Record Clearly Shows That The March 10 Offer Was Revoked Prior To Acceptance.

1. Plaintiffs' modification argument is inapplicable.

Plaintiffs argue that a contract was created on March 25, when Plaintiffs signed the March 10 Agreements and that any modification of such contract was required to be in writing. (Br. at 12.) Plaintiffs put the cart before the horse. The concept of "modification" is inapplicable here because no contract was ever formed to terminate Plaintiffs on May 2. It is axiomatic that a non-existent contract cannot be modified.

Universal principles of contract law require three elements of contract formation: offer, acceptance, and consideration. See Scott v. Savers Property & Casualty Ins. Co., 262 Wis. 2d 127, 149-150, 663 N.W.2d 715 (2003). An offeree retains the right to revoke an offer at any time prior to its acceptance. See Larson v. Superior Auto Parts, Inc., 275 Wis. 261, 270, 81 N.W.2d 505, 511 (1957) ("[A]n offer may be revoked by a communication from the offeror to the offeree that the offeror no longer intends to enter into the proposed contract, provided the communication is received by the offeree before he has exercised his power of creating a contract by acceptance of the offer.") (internal citations omitted); Kocinski v. Home Ins. Co., 154 Wis. 2d 56, 71, 452 N.W.2d 360 (1990) (finding that settlement offer was timely revoked after signature where party informed opposing party verbally of revocation prior to decision-maker's acceptance of the settlement), citing Williston on Contracts, sec. 55 (3d ed. 1957) (additional citations omitted).

Here, the record clearly shows that NewPage revoked the March 10 offer before Plaintiffs

attempted to accept it on March 25. It is undisputed that on March 24, neither Plaintiff had signed the Release Agreement. (DPFOF 49 (admitted).) On March 24, Reichert announced that the Niagara Mill would continue operating until approximately October, and that new severance agreements and release dates would be forthcoming. (Rebuttal ¶¶ 1-2 re: DPFOF 51-52; Reichert Dep. at 58, Dep. Ex. 6; Reddinger Dep. at 46-48; Lefebvre Dep. at 43-44.) Reichert's testimony that he informed the employees that release dates would be changing is uncontroverted.[7] Furthermore, Reichert told Reddinger that same day, in no uncertain terms, that she could not sign the old agreement and turn it in. (DPFOF 56 (admitted).) Reichert's communications are ample evidence of communication of revocation. Therefore, Plaintiffs' arguments should be disregarded and summary judgment entered in favor of NewPage.

2.  The March 10 offer was not an irrevocable option contract.

Plaintiffs next argue that even if Reichert communicated that the offer was revoked, the revocation is legally invalid because the March 10 offer constituted an irrevocable option contract under Wisconsin law. (Br. at 13-15.) Again, Plaintiffs' argument finds no support in either the record or the law. In fact, the Wisconsin Supreme Court has expressly held that a release and settlement agreement is not an option contract and can be revoked. See Kocinski, 154 Wis. 2d at 70-71. In Bratt v. Peterson, 31 Wis. 2d 447, 451, 143 N.W.2d (1966), the Court discussed the features of an option contract, stating that the nature of the contract as one of "option" should be made clear, the obligation of the offeror to hold the offer open for a specific period of time should be set forth, and the additional consideration for the "option" should be expressed with certainty. Id. at 452. None of those elements are present in the March 10 offer to Plaintiffs. While Plaintiffs were given a consideration period, as required for waiver of age

---

[7] Lefebvre's lack of recollection of the contents of the meeting certainly does not refute Reichert's testimony, supported by his notes of the meeting, along with Reddinger's testimony. (Dep. Ex. 6; Reichert Dep. at 58; Reddinger Dep. at 46-48.)

discrimination claims, NewPage never promised to hold the offer open for any period of time. In fact, Courts have held that the consideration period contained in such releases does <u>not</u> constitute a promise to hold the offer open. <u>See</u> <u>Ellison</u>, 164 F.3d at 1114 ("The statute does not forbid an employer from revoking an offer before the twenty-one days expire.") Plaintiffs' argument that the March 10 offer was an "option" is a non-starter. Summary judgment should be entered.

### B. <u>Plaintiffs' "Reliance" Was Far From Reasonable Under The Circumstances.</u>

To the extent Plaintiffs belatedly attempt to recast their state common law claims as ERISA estoppel claims, it matters not because Plaintiffs' claims fail under both state and federal law. Estoppel, at its core, requires a showing of detrimental reliance that was reasonably undertaken given the circumstances of the case. <u>See</u> <u>Bock,</u> 257 F.3d at 711 (upholding summary judgment on estoppel claim under ERISA where Plaintiff failed to show detrimental reliance); <u>Hoffman v. Red Owl Stores, Inc.</u>, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965) (reliance must be reasonable and proven with certainty).

Plaintiffs' alleged reliance on the May 2 termination dates was anything but reasonable.[8] Before either of them attempted to accept the March 10 offer, Plaintiffs were told that the termination dates were changing. (Rebuttal DPFOF 51-52; Reichert Dep. at 58, Dep. Ex. 6; Reddinger Dep. at 46-48; Lefebvre Dep. at 43-44.) They were expressly told that NewPage would not accept the March 10 documents and that they would be given new release agreements. (Id.) Reddinger was told again, in an individual conversation with Reichert, that she could not accept the March 10 offer and turn it in. (DPFOF 56 (admitted).)

---

[8] The record raises serious question as to whether either Plaintiff acted in "reliance" upon the March 10 letter at all. Both Plaintiffs applied for their new jobs *before* they received the March 10 letter, stating that they would be available for work in May. (DPFOF 41-42 (admitted).) There is no evidence that Plaintiffs took any action at all between March 10 and March 24 that could even remotely be characterized as reliance activity. Neither Plaintiff accepted new employment at other firms until April, well after they had been informed both verbally and in writing that their release dates would be changing. (Rebuttal DPFOF 107-108; Lefebvre Dep. at 61, Ex. 11; Reddinger Dep. at 66-67, Ex. 11.)

14

Case 1:09-cv-00141-WCG    Filed 11/02/09    Page 14 of 16    Document 30

Mere days later, before either Plaintiff had accepted employment elsewhere, Plaintiffs were again told, in writing, that their release dates were being changed and their employment would continue until approximately October. (Dep. Ex. 3; Rebuttal ¶¶ 1-2 re: DPFOF 107-108; Reddinger Dep. at 66-67, Ex. 16; Lefebvre Dep. at 61, Ex. 11.) Prior to his departure, Lefebvre was expressly told, in no uncertain terms, by Bill Smith that May 2 was not his release date and that if he left the Company on May 2, he would not get severance. (DPFOF 78-79 (admitted).) How much clearer could it be that May 2 was not the Company-selected release date for Plaintiffs?

The fact is that Plaintiffs made a conscious, unilateral choice not to work beyond May 2, even though the Company wanted to retain them. Reddinger testified, "I knew in my mind and in my heart that I needed to be secure in a job before October; and so to stay at the mill until October 1st, no amount of money was going to make me comfortable." (DPFOF 71 (admitted).) Likewise, Lefebvre knew NewPage wanted him to stay on long after May 2, but he chose not to continue; Lefebvre testified: "[w]]herever they needed operational [assistance], they could put me in there, which I'm not trained…[t]hat was unacceptable to me at that point." (Lefebvre Dep. at 53-54.)

The clear and unambiguous record in this case supports only one conclusion – that no genuine issue of material fact exists concerning Plaintiffs' severance and estoppel claims. Accordingly, summary judgment should be entered for NewPage.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant summary judgment and dismiss the Complaints of Reddinger and Lefebvre in their entirety.

Dated this 2nd day of November, 2009.

MICHAEL BEST & FRIEDRICH LLP


By: s/ Scott C. Beightol
    Scott C. Beightol, SBN 1006422
    Elizabeth M. Drew, SBN 1034598
    100 East Wisconsin Avenue, Suite 3300
    Milwaukee, WI 53202-4108
    Telephone: 414-271-6560
    Fax: 414-277-0656
    E-mail: scbeightol@michaelbest.com
    E-mail: emdrew@michaselbest.com

Attorneys for Defendants
SENA SEVERANCE PAY PLAN and
NEWPAGE WISCONSIN SYSTEM, INC.

T:\CLIENTA\024480\0015\A3548566.2